IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RICKY SWEET,

    Plaintiff,

vs.                                    Case No. 4:08cv17-RH/WCS

WALTER A. McNEIL, Secretary,
Florida Department of Corrections,

    Defendants.

                                           /

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner in the Florida prison system, has filed suit against the Secretary of the Department of Corrections, alleging that rule 601.314, §§ 9-17, FLA. ADMIN. CODE, prohibiting "disorderly conduct" by prisoners, violates due process because it is vague and does not give adequate notice of the conduct prohibited. Doc. 1. Defendant has moved for summary judgment. Doc. 12. An order was entered advising the *pro se* Plaintiff of his obligations in responding to the motion. Doc. 14. It was noted that the motion had been filed without discovery, and that discovery was probably not needed as the facts did not seem to be in dispute, but Plaintiff was given

the opportunity to ask for discovery. *Id.*, pp. 1-2. The order set July 2, 2008, for taking under advisement Defendant's motion for summary judgment.

Plaintiff did not seek discovery. Instead, he filed his own motion for summary judgment. Doc. 15. I began review of the motions for summary judgment and noticed that Defendant had not filed the exhibits referenced in the motion. Doc. 16. That order also gave Plaintiff an opportunity to state whether he had received the exhibits earlier. *Id.*, p. 3. Defendant filed the exhibits on October 17, 2008. Doc. 17. Defendant stated that while the case file reflected that copies of the exhibits had been mailed to Plaintiff when the motion for summary judgment was filed, another set was served upon Plaintiff. *Id.*, p. 2. On November 13, 2008, I noted this history, and noted that Plaintiff had not complained about not having received the exhibits; I also notified the parties that both motions for summary judgment were under advisement. Doc. 18.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). If they do so, the burden shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S.Ct.

2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999) ("We are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party.").

**Legal analysis**

Rule 33-601.314, FLA. ADMIN. CODE, is a table entitled "Rules of Prohibited Conduct and Penalties for Infractions." Subsection 9-17 of the current version lists "Disorderly Conduct" as an offense punishable by 30 days in disciplinary confinement and loss of 60 days of gaintime. Plaintiff contends that the rule is vague and facially invalid. Doc. 15, p. 2.

It is undisputed that Plaintiff was subjected to punishment for disorderly conduct on June 8, 2005. Doc. 12, p. 2. Plaintiff and another prisoner were wrestling in the law library. Id. The report of this incident states that in the law library, another prisoner grabbed Plaintiff around the upper body. Doc. 17, Ex. C (doc. 17-2, p. 11). Plaintiff and the other prisoner were ordered to "break it up," but they "continued to struggle and wrestle knockin[g] over papers." Id. Plaintiff, however, launches a facial attack to the rule, and does not contest the validity of this disciplinary proceeding.

As noted by our circuit, "[s]ome disagreement has appeared lately among members of the Supreme Court on exactly how high the threshold for facial invalidation

should be set." Florida League of Professional Lobbyists, Inc. v. Meggs, 87 F.3d 457, 459 (11th Cir.), *cert. denied*, 519 U.S. 1010 (1996). That disagreement persists:

> Under *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications. *Id.*, at 745, 107 S.Ct. 2095. While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a " 'plainly legitimate sweep.' " *Washington v. Glucksberg*, 521 U.S. 702, 739-740, and n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (STEVENS, J., concurring in judgments).

Washington State Grange v. Washington State Republican Party, __ U.S. __,128 S.Ct. 1184,170 L.Ed.2d 151 (2008). The latter formulation will be used herein.

The Florida First District Court of Appeal has held without much discussion that this Rule is not vague or overbroad. Smith v. Florida Dept. Of Corrections, 875 So. 2d 683 (Fla. 1st DCA 2004). The court cited Smith v. Fla. Dep't of Corr., 799 So. 2d 319, 319 (Fla. 1st DCA 2001) (holding that the prohibition against fighting in Fla. Admin. Code R. 33-601.314, § 2-4 was not unconstitutionally vague or overbroad) and D.L.B. v. State, 707 So. 2d 844, 845 (Fla. 2d DCA 1998) (holding that statute prohibiting "affray" was not impermissibly vague because ordinary people could understand the meaning of "affray"). In the Smith case, the court reasoned that the Rule there, which prohibited "fighting" in prison, was "not susceptible to an overbreadth challenge unless it applies to conducted protected by the First Amendment." 799 So. 2d at 319-320, quoting State v. Hoyt, 609 So.2d 744, 746 (Fla. 1st DCA 1992).

A thorough review of federal law governing a vagueness challenge to a prison disciplinary regulation is found in Anderson v. Crosby, 2005 WL 3357220 (N.D. Fla. Mar 25, 2005) (No. 5:04CV164-SPM/MD), *Report and Recommendation Adopted by*, 2005

WL 3357182 (N.D. Fla. Dec 09, 2005) (No. 5:04CV164-RS).  This was a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a disciplinary report for refusing to obey an order, and thus the issue came to the court through the restrictive lens of habeas review.[1]  A central claim was that a Florida prison rule, that a Florida prisoner may be disciplined for "disobeying verbal or written order – any order given to an inmate or inmates by a staff member of other authorized person," violated due process because it was vague.  2005 WL 3357220, *6, citing FLA. ADMIN. CODE § 33-601.314, subsection 6-1.  Unlike the case at bar, the challenge was to the rule as applied.  2005 WL 3357182, at *3.  The prisoner was on a work detail and had been ordered to carry a water cooler up a hill; he refused and was disciplined.  2005 WL 3357220, at *1.  The habeas claim was rejected.  The court held:

> There is nothing vague about a regulation requiring an inmate to obey the orders of a corrections officer.  A reasonable person reading the rule would have fair warning that failing to follow an order to perform a work-related task while on work assignment violates this rule.

2005 WL 3357220, at *8.

A troubling issue in the Anderson case was whether vagueness cases dealing with criminal laws should apply to prison rules.  That analysis is accurate and well-written, and will be incorporated here at length:

> The Supreme Court has not set forth a specific approach for evaluating challenges to prison regulations on vagueness grounds. The applicable Supreme Court law pertaining to the degree of vagueness tolerated by the Constitution in criminal statutes is well settled:

---

[1] A petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

> That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

<u>Connally v. General Construction Co.</u>, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (The applicable standard when a criminal statute is being challenged as unconstitutionally vague is Connally ). Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the type the kind of notice that will enable ordinary people to know what it prohibits. Second it may authorize or encourage arbitrary and discriminatory enforcement. <u>City of Chicago v. Morales</u>, 527 U.S. 4156, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (1999).

Some courts have applied this same standard to vagueness challenges to prison regulations. *See, e.g.*, *Chatin v. Coombe*, 186 F.3d 82, 89 (2nd Cir.1999) (applying same vagueness analysis applicable to criminal statutes); *Newell v. Sauser*, 79 F.3d 115, 117-18 (9th Cir.1996) (citing cases); Glano v. Senkowski, 54 F.3d 1050, 1057 (2nd Cir.1995) (applying *Connally* standard to vagueness challenge to prison regulation); *Rios v. Lane*, 812 F.2d 1032, 1038 (7th Cir.), cert. denied, 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987) (applying *Connally* and noting further that "where prohibited conduct does not carry with it its own indicia of wrongdoing the need for clearly drawn prison regulations is particularly acute"); *Falkiewicz v. Grayson*, 110 Fed. Appx. 491, 2004 WL 1888872, at *2 (6th Cir.2004) (approving district court's application of *City of Chicago*); *Sands v. Wainwright*, 357 F.Supp. 1062 (M.D. Fla.), r*ev'd on other grounds*, 491 F.2d 417 (5th Cir.1973); *Aiello v. Litscher*, 104 F.Supp.2d 1068, 1082 (W.D. Wis. 2000) (applying *City of Chicago* to vagueness challenge to prison regulation); *Arey v. Robinson*, 819 F.Supp. 478 (D. Md.1992) (applying *Connally* standard). However, other courts have applied a less rigorous application of due process guarantees in evaluating prison regulations. *See, e.g., Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir.1984) (citing *Grayned* and *Lanzetta*, but implying that prison regulations are subject to a less strict vagueness test); *Meyers v. Aldredge*, 492 F.2d 296, 310 (3rd Cir. 1974) (adopting a more relaxed vagueness standard applicable to prison regulations and holding that vagueness principles must be applied in light of the legitimate needs of prison administration; "Due process undoubtedly requires certain minimal

>standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions."); *Wolfel v. Morris*, 972 F.2d 712, 714 (6th Cir.1992) ("[T]he degree of specificity required in prison regulations is not the same as that required in other circumstances. . . ."); *El-Amin v. Tirey*, 817 F.Supp. 694, (W.D. Tenn. 1993) (while due process generally prohibits excessively vague laws, the degree of specificity required when courts analyze whether prison regulations comply with due process is not the same as that required for those laws applicable to free citizens).  The court need not resolve the issue here, because even applying the standard more favorable to petitioner – the standard requiring greater specificity – petitioner is not entitled to relief.

2005 WL 3357220, at *5 (footnote omitted).

To this analysis I add the following comments.  The prison regulation in the Second Circuit case (<u>Chatin</u>) prohibited "religious services, speeches or addresses by inmates other than those approved by the Superintendent."  186 F.3d at 84.  The prisoner there was punished under this regulation for engaging in silent Islamic prayer.  *Id*.  The court elected to apply criminal law standards because the regulation "carries penalties which are more akin to criminal rather than civil penalties *and also implicates the free exercise of an individual's religion.*"  *Id*., at 86-87 (emphasis added).  Likewise, the prisoner in <u>Rios</u> had been disciplined for "gang activity" for trying to distribute a card providing information about Hispanic radio stations.  812 F.2d at 1034-1035.  Again, the First Amendment was implicated.  The First Amendment is not implicated in the case at bar.

>On the other hand, the Fifth Circuit held in <u>Adams v. Gunnell</u>:

>We are mindful that this case arose in a prison, where problems of administration in general and security in particular range from difficult to nearly impossible.  "[O]ne cannot automatically apply procedural rules designed for free citizens in an open society, . . . to the very different situation presented" by a prison disciplinary proceeding.  *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935

> (1974). Balanced against the needs of the institution, however, is the fundamental requirement that persons be able somehow to avoid conduct that will lead to severe sanction. Because "legalistic wrangling" over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the interpretation of those rules by prison authorities "unless fair notice was clearly lacking." *E.g., Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir.1983) (*quoting Meyers v. Alldredge*, 492 F.2d 296, 311 (3d Cir.1974)).

729 F.2d at 369-370. The claims there involved both the First Amendment and an as-applied due process vagueness claim. The case involved two federal prisoners "who had been disciplined for engaging in 'conduct which disrupts the orderly running of the institution' by signing a petition complaining of discrimination against black inmates." 729 F.2d 363. Again, the First Amendment was implicated, and as to the First Amendment claim, the court found against the prisoners. *Id.*, at 367-368. As to the due process claim, the court noted that no prisoner had ever before been disciplined for circulating a petition under this rule. *Id.*, at 369. There was no evidence that the prisoners "coerced or threatened other inmates in connection with the petition." *Id.* The court reasoned:

> Perhaps these inmates could have anticipated that the prison administration might disagree with the contents of the petition or resent its dissemination outside the institution. They could not have known, however, that serious disciplinary sanctions would be imposed for their conduct.

*Id.* Despite the apparent application of a lesser standard, the court ruled that "basic due process was violated by the eventual imposition of severe punishment for conduct no inmate could have known was against prison rules." *Id.*, at 370.

In Meyers v. Aldredge, the Third Circuit reasoned:

Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity

> required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration.

492 F.2d at 310 (citations omitted). The rule challenged there provided disciplinary sanctions for "conduct prejudicial to the good order, security and safety of the community and the security of inmate population." *Id.*, at 309. The court ruled against the prisoners, finding that "the inmates clearly should have realized that their conduct in creating a total work stoppage established a dangerous situation and that such conduct would be punishable." *Id.*, at 310.

In Wolfel v. Morris, from the Sixth Circuit, the prisoners, like the prisoners in Adams v. Gunnell, were punished for circulating a petition concerning their grievances. 972 F.2d at 714. The prisoners had been charged with violating a prison rule that provided that: "No inmate shall be permitted to become an active member in any group inside of an institution or solicit active membership in any group until such group is approved pursuant to the terms of this rule." *Id.*, at 717. The court favorably cited Meyers v. Aldredge for the proposition that a due process vagueness challenge to a prison rule is not governed by the same degree of specificity as in "other circumstances." *Id.* However, applying the reasoning of Adams v. Gunnell, the court concluded that the prisoners had not been given sufficient warning of the prohibited conduct. *Id.*

Finally, the last case cited above applying a more deferential due process standard is El-Amin v. Tirey. The court there held that a prison rule which prohibited

"creating a disturbance" was not too vague as applied in that case. 817 F.Supp. 701-703.

It is likely that our circuit will not apply the stricter due process standard applicable to criminal laws when deciding whether a prison disciplinary rule is void for vagueness. This is signaled by an unpublished decision supplied by Defendant. Smith v. Florida Department of Corrections, 2008 U.S. App. LEXIS 6420, 2008 WL 781824 (11th Cir. Mar 25, 2008) (No. 07-13752) (filed as Defendant's Exhibit G, doc. 17-2, pp. 29-31). The Florida prisoner challenged § 33-601.314, subsection 6-1, which punishes "disobeying verbal or written order – any order given to an inmate or inmates by a staff member or other authorized person." Id., at 2008 WL 781824,*1. This is the same rule that was challenged in Anderson v. Crosby, *supra*. The Eleventh Circuit ruled:

> "Unlike the strict standards of scrutiny applicable to the constitutional rights of persons in free society, the Supreme Court has adopted a deferential standard for determining whether a prison regulation violates an inmate's constitutional rights," and "[a] prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000). In examining the reasonableness of the regulation, we use the standard announced by the Supreme Court in Turner v. Safley, 482 U.S. 78, 89, 91, 107 S.Ct. 2254, 2261, 2263, 96 L.Ed.2d 64 (1987), and consider the following factors:
>
>> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.
>
> *Hakim*, 223 F.3d at 1247-48.

> The district court properly dismissed Smith's facial constitutional challenge to the rule. First of all, there is a rational connection between the regulation and the legitimate governmental interest of maintaining secure prisons. Additionally, Smith's complaint demonstrates there are alternative means by which he can exercise his First Amendment rights. Amending the rule to require prisoners to obey only "legal" orders could lead to a strain on guards and resources, and Smith does not suggest that the disobeying order rule is an exaggerated response to the overriding need to maintain secure prisons. Moreover, because the disciplinary report was issued for his refusal to follow an order, and not for an arbitrary reason or in retaliation for exercising his right of free speech, the disobeying order rule was not applied in an unconstitutional manner.

*Id.*, at *3.

In summary, I believe the better reasoned position is that some deference is due prison administrators in determining whether a prison disciplinary rule is void for vagueness. That is, after all, the standard required when a prison regulation impinges upon a First Amendment interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

"Disorder" in a prison is well-understand by an objectively reasonable prisoner. The prison day proceeds according to schedules and rules strictly governing conduct. Prisoners have already shown an inability to obey society's rules. They live in a closely confined environment. Disruptions in such an environment can quickly become dangerous to other prisoners and staff. Any behavior which disrupts the peace of the prison community is "disorderly conduct." An objectively reasonable prisoner should know that. Indeed, § 33-601.314, FLA. ADMIN. CODE, subsections 1 through 9, define 92 specific ways that a prisoner can be disorderly within a prison. These offenses include assault, battery, threats, disrespect, riots, strikes, mutinous acts, disturbances,

contraband regulation, regulation of movement in unauthorized areas, count procedure violations, disobedience to orders, destruction, misuse, or waste of property, failure to maintain hygiene, and 36 miscellaneous infractions, of which "disorderly conduct" is one.  § 33-601.314, FLA. ADMIN. CODE.

It is unreasonable to require prison administrators to enact a rule governing every form of disorderly conduct that must be prohibited.  This case is an example.  Plaintiff was disciplined for wrestling with another prisoner in the library.  The behavior Plaintiff engaged in may not have violated another disciplinary rule, such as "battery or attempted battery on an inmate,"[2] or "fighting,"[3] or "spoken, written, or gestured threats,"[4] but wrestling in a confined law library in a prison brings disorder to the space.  This behavior also might have been punished as "creating, participating in or inciting a minor disturbance,"[5] but the fact that several penal laws overlap has nothing to do with whether the first penal law is too vague to understand.

More to the point, there are a number of kinds of disorderly conduct in a prison not explicitly described as offenses in § 33-601.314, FLA. ADMIN. CODE.   Shouting in a dining hall, throwing food in a dining hall, pushing in line at the health clinic, intentionally stopping up a toilet, pushing books off a desk in a classroom, spitting on another prisoner, spitting in another person's food, dumping a can of paint into a flower bed, loudly playing a radio in a dormitory after others have gone to sleep, or throwing

---

[2] Rule 1-18.

[3] Rule 2-4.

[4] Rule 1-3.

[5] Rule 2-3.

excrement at another person would be known by an objectively reasonable prisoner to be "disorderly conduct."  Where, as here, the challenge is a facial challenge, the Due Process Clause only requires that the rule prohibiting "disorderly conduct" has a "plainly legitimate sweep."  Here, it plainly does.

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment, doc. 12, be **GRANTED**, Plaintiff's motion for summary judgment, doc. 15, be **DENIED**, and the Clerk be directed to enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 13, 2009.


                      s/   William C. Sherrill, Jr.
                      **WILLIAM C. SHERRILL, JR.**
                      **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**